UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,         )
                                )
         v.                      )    No. 4:09CR815 ERW
                                )                   (FRB)
GEORGE HENRY ROTHERMICH,         )
                                )
              Defendant.         )

**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). A hearing was held on the defendant's various pretrial motions on March 26, 2010. A written transcript of the hearing was prepared and filed with the court on April 5, 2010. (<u>See</u> Docket No. 65). Counsel for the defendant requested and was granted leave to file a post hearing memorandum of law.

<u>Defendant George Henry Rothermich's Motion To Suppress Based On Events Of May 29, 2008</u> (Docket No. 40)

Testimony and evidence was adduced on the defendant's motion at the hearing before the undersigned. From the testimony and evidence adduced the undersigned makes the following findings of fact.

## Findings Of Fact

On March 25, 2008, an anonymous caller reported to the Franklin County Sheriff's Office that George Rothermich was cooking methamphetamine in a detached garage at his residence at 4167 Highway 50 in Beaufort, Missouri. The caller reported that she learned this information from her husband who had been at that location about one month before and had observed a "lab" in the garage. The caller reported that Roy Rothermich was also "in and out of there". The caller reported that George Rothermich's wife, Crystal, was also involved and that a 6 or 7 year old son lived at the residence. The caller advised that there might be guns on the property. The caller also described vehicles used by George and Crystal Rothermich. The call was received by Detective Gilliam of the Franklin County Sheriff's Office who made a note of the information provided by the caller. (See Defendant's Exhibit 13). Detective Gilliam then passed the information on to Detective Scott Briggs of the Franklin County Sheriff's Office Narcotics Unit.

In April 2008, Detective Darryl Balleydier of the Washington, Missouri, Police Department, and then assigned to Franklin County Narcotics Enforcement Unit, was notified that James Corbin had been arrested by the Washington Police Department after being found in possession of methamphetamine precursors. Detective Balleydier then interviewed James Corbin. Corbin told Detective

Balleydier that he intended to give the precursors to a person named "George" who lived in Beaufort, Missouri. Corbin described George's residence and how to get there.

Later in April 2008, Detective Balleydier learned that James Corbin had been arrested in St. Louis County, Missouri, after purchasing pseudoephedrine pills. Corbin told St. Louis County officers that he intended to provide the pseudoephedrine pills he had purchased to "George" who lived in Beaufort, Missouri. The St. Louis County officers then passed this information on to Detective Balleydier.

On May 27, 2008, a confidential informant reported to Detective Briggs that George Rothermich had an anhydrous ammonia tank located in the garage of Rothermich's property in Beaufort.

Armed with all of this information Detective Briggs decided to go to the Rothermich property in Beaufort, to contact George Rothermich, and to speak with him in an effort to either verify or disprove the information that he had received.

On May 29, 2008, Detectives Briggs, Balleydier and Gilliam went to the Rothermich property at 4167 Highway 50 in Beaufort. Upon arriving at that location they approached the residence and knocked on several doors and windows at the front, side and rear of the residence. No one responded to the knocking. Detective Briggs then walked to a detached garage located next to

the residence.   Upon approaching the garage he noticed a video surveillance camera mounted on the garage.   This was of significance to Detective Briggs because he knew from past experience and investigations that subjects operating clandestine methamphetamine laboratories use such cameras to detect the presence of law enforcement officials.   Detective Briggs also noticed a black Camaro automobile parked in front of the garage. The hood of the vehicle was open and tools were sitting on the car. A check of the license plate number on the vehicle showed it to be registered to Anthony Seamon.   Detective Brigs knew Seamon to be a person involved in the past in the manufacture and distribution of methamphetamine in the Franklin County area.   The residence, garage, Camaro auto and surveillance camera are depicted in various photographs marked as Defendant's (group) Exhibit 14, and Defendant's Exhibit 16.

Detective Briggs then knocked several times on the door to the garage.   Again, no one answered.   Detective Briggs then walked to the rear area of the garage to see if he could locate anyone.   As he did so he noticed a 55 gallon drum commonly referred to as a "burn barrel" located behind the garage a distance of some 40-60 feet away.   "Burn barrels" are commonly used to burn trash or discarded items.   Detective Briggs knew from his training and experience that persons engaged in the illicit manufacture of

methamphetamine often burn materials used in such activity in an effort to destroy the evidence of their activity and that they used such "burn barrels" to do so.  Detective Briggs then approached the barrel.   In the barrel he saw several items that he knew from training and experience to be associated with the manufacture of methamphetamine, including two burned one gallon cans similar to fuel cans, lithium battery casings and glass jars.  He also saw what appeared to be burned battery casings on the ground next to the barrel.  (<u>See</u> Defendant's group Exhibit 14; Defendant's Exhibit 15).

Detective Briggs then decided to apply for a warrant to search the residence, garage and vehicles on the property.  He left the area, leaving Detectives Balleydier and Gilliam at the property.

Shortly after Detective Briggs left the scene a person, later identified as Anthony Seamon, came out of the residence.  Because Seamon had obviously been inside the residence when the officers knocked on the doors and windows but did not respond, Detectives Balleydier and Gilliam became concerned that someone else might be inside the residence and that evidence could be destroyed or they themselves could be placed in danger.  For that reason the detectives went into the residence to determine if anyone else was inside.  In looking about the house they entered a

second floor bedroom.  There was an unenclosed toilet inside the bedroom.   In the toilet bowl Detective Balleydier saw a plastic baggie corner and a piece of aluminum foil.  After determining that no one else was in the residence the officers left.  Detective Balleydier telephoned Detective Briggs to advise him of what had occurred.

Detective Briggs then prepared an application for a warrant to search the residence, detached garage and vehicles on the property at 4167 Highway 50, Beaufort, Missouri.  In support of the application he prepared an affidavit.  The affidavit set out the information provided by the anonymous caller on March 25, 2008; the information provided by James Corbin on the two occasions when he was arrested in April 2008; and the information received by Detective Briggs from the confidential informant on May 27, 2008. The affidavit also described the items seen in and around the burn barrel in the yard near the detached garage, as well as the surveillance camera.  The affidavit set out that Anthony Seamon had come out of the residence.  The affidavit noted that Seamon was known to Detective Briggs from previous investigations and was involved in the manufacture of methamphetamine.  It was also noted that Seamon was known to have made numerous purchases of pseudoephedrine in the recent past.  The affidavit set out that in October 2007, Roy Rothermich was arrested and found to be in

possession of a substance that appeared to be methamphetamine. The affidavit noted that Roy Rothermich had been arrested in April, 2008, and found to be in possession of methamphetamine and marijuana and that on that occasion he listed his home address at 4167 Highway 50, Beaufort, Missouri. The affidavit noted that in a police report of an occurrence in February 2008, George Rothermich's home address was listed as 4167 Highway 50, Beaufort, Missouri. The affidavit also set out Detective Briggs' training and experience in the investigation of narcotics cases in general and of methamphetamine manufacturing in particular, and his knowledge of the methods and manner of operation of persons engaged in such activity. The application and affidavit were presented to a judge of the Circuit Court of Franklin County, Missouri, who found probable cause to believe that certain described items could be found on the described premises and on May 29, 2008, at 1:20 p.m., and issued a warrant to search the premises. (See Government's Exhibit 1, Application, Affidavit and Search Warrant).

While Detectives Balleydier and Gilliam were at the residence awaiting the return of Detective Briggs with the search warrant the defendant George Rothermich drove up to the residence in a white pickup truck. Detective Balleydier approached the truck and determined that the driver was defendant George Rothermich. Detective Balleydier identified himself to Rothermich and told him

why the officers were at the premises, namely that they were investigating reports that Rothermich was involved in manufacturing methamphetamine at the property.  Rothermich then lowered his head and stated that his wife wasn't involved in anything.

Detective Balleydier then placed Rothermich under arrest for possession of the items of paraphernalia found in and around the burn barrel.  Handcuffs were placed on Rothermich.  Detective Balleydier then conducted a search of Rothermich's person and found and seized a glass vial containing what appeared to be methamphetamine, a piece of paraphernalia known by the detective to be used to snort, ingest or smoke methamphetamine, and $495.00 in cash.  Detective Balleydier then conducted a search of the pickup truck in which Rothermich had arrived.  Inside the truck he found and seized a digital scale, a glass pipe, a baggie corner and twist ties.

Detective Briggs returned to the scene with the search warrant he had obtained and the warrant was executed.  Numerous items of evidence were seized from the residence and detached garage.  (<u>See</u> Government's Exhibit 1 – Search Warrant Return and Inventory with attachments).

## Discussion

In his Motion To Suppress filed on March 5, 2010, the defendant set out what he anticipated the evidence would show at a hearing on his motion. He averred generally that "he will challenge the probable cause to search the two physical structures" at 4167 Highway 50, Beaufort, Missouri, and would challenge statements made by the defendant because no <u>Miranda</u> warnings were given to the defendant. He asked leave to submit a more detailed and specific memorandum of law following the hearing.

In his post-hearing memorandum the defendant asserts as grounds to suppress the evidence seized that the officers did not lawfully observe the "burn barrel" and debris around it because the barrel was within the curtilage of the residence. He also claims that there was false and omitted information in the affidavit submitted in support of the application for the search warrant, rendering the warrant invalid.

The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. <u>United States Constitution, Amend. IV</u>. The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." <u>Rakas v. Illinois</u>, 439 U.S. 128, 143

(1978).  Fourth  Amendment  protection  most  certainly  and fundamentally extends to a person's home.  <u>Silverman v. United States</u>, 365 U.S. 505, 511 (1961).  The Fourth Amendment protection extends beyond the threshold of the residence and protects, as well, areas surrounding the home in which is carried on the "intimate activity associated with the 'sanctity of a man's home and the privacies of life.'"  <u>Oliver v. United States</u>, 466 U.S. 170, 180 (1984)(quoting <u>Boyd v. United States</u>, 116 U.S. 616, 630 (1886)).  This area surrounding the home is referred to as the curtilage".

To the extent that the defendant claims that the officers violated his Fourth Amendment rights by entering onto his property to conduct their "knock and talk" procedure, such claim has no merit.  "Law enforcement officers may encroach upon the curtilage of a home for the purpose of asking questions of the occupants."  <u>United States v. Hammett</u>, 236 F.3d 1054, 1059 (9th Cir.), <u>cert. denied</u>, 534 U.S. 866 (2001); <u>United States v. Raines</u>, 243 F.3d 419, 421 (8th Cir. 2001).  Nor does the fact that the officers walked to the rear of the structures in order to locate occupants of the property constitute any Fourth Amendment violation.  <u>United States v. Anderson</u>, 552 F.2d 1296, 1300 (8th Cir. 1977)("We cannot say that the agents' actions in proceeding to the rear after receiving no answer at the front door was so incompatible with the scope of

their original purpose that any evidence inadvertently seen by them must be excluded as the fruit of an illegal search.").

In <u>United States v. Dunn</u>, 480 U.S. 294, (1987), the Supreme Court set out a number of factors to be considered in determining whether an area in question is within the curtilage of the home, including the proximity of the area to the home; whether the area is included within an enclosure surrounding the home; the nature of the uses to which the area is put; and the steps taken by the resident to protect the area from observation by people passing by. <u>Id.</u> 301. <u>See</u> <u>also</u> <u>United States v. Boyster</u>, 436 F.3d 986, 991 (8th Cir. 2006); <u>United States v. Pennington</u>, 287 F.3d 739, 745-46 (8th Cir.), <u>cert.</u> <u>denied</u>, 537 U.S. 1022 (2002). These factors are not to be applied mechanically but are to be used in determining the extent to which the area is associated with the home in determining whether it should be afforded the same Fourth Amendment protection. Applying these factors to the circumstances here leads to the conclusion that the "burn barrel" and the area in which it was situated were not within the curtilage of the home. The barrel was located a significant distance away from and behind the home and garage area. The area where the barrel was situated was not fenced or in any way otherwise enclosed. It sat on open ground behind the structures. There were no steps taken to shield the barrel from the view of someone lawfully on the property. The

nature of the barrel itself and area around it shows that it was used to burn items of trash discarded by the residents of the property, a further indication that the residents of the property did not intend to assert any privacy in the barrel and items therein. <u>California v. Greenwood</u>, 486 U.S. 35 (1988); <u>United States v. Long</u>, 176 F.3d 1304, 1308 (10th Cir.), <u>cert.</u> <u>denied</u>, 528 U.S. 921 (1999)("[I]t is difficult to imagine anyone using an area in which garbage was regularly deposited for the intimate activities of the home.") The burn barrel and area around it were in plain view in an open area not within the curtilage of the home and Detective Briggs' observation of the barrel and the area around it was not unlawful.

In his original motion the defendant asserts that the warrant to search the residence and detached garage was lacking in probable cause. Search warrants to be valid must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause, may be found in the place to be searched. <u>Johnson v. United States</u>, 333 U.S. 10 (1948); <u>Warden v. Hayden</u>, 387 U.S. 294 (1967); Rule 41, Federal Rules of Criminal Procedure. The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions. "In

dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 176 (1949). Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965). Probable cause may be found in hearsay statements from reliable persons, Gates, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, Draper v. United States, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, McDonald v. United States, 335 U.S. 451, 454 (1948). Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. Gates, 462 U.S. at 230. Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference if there is a substantial basis for the finding. Gates, 462 U.S. at 236.

The search warrant at issue here sets out ample information upon which to find probable cause that the described items could be found on the property. The warrant sets out information from several sources that methamphetamine manufacturing was occurring at the property. The information from the separate sources tended to corroborate each other. Some of the information came from a named person who admitted their own complicity in that criminal activity. Such statements against a person's penal interest lend credence to the reliability of the information. United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996). The affidavit set out that named subjects in the recent past had been found in possession of drugs and drug paraphernalia. The affidavit also set out Detective Briggs' discovery of discarded items on the property which he knew to be associated with the manufacture of methamphetamine. The affidavit also set out the affiant's knowledge of the method and manner by which persons engaged in such activity carry on and conduct such operations. All of this provided probable cause for the issuance of the warrant.

The defendant also contends that the warrant was invalid because Detective Briggs omitted material facts from the affidavit in support of the warrant. In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that if an officer omits critical information from a search warrant application and obtains a

warrant, the resultant search may be unreasonable under the Fourth Amendment. <u>Id.</u> at 164-65. "To prevail on a <u>Franks</u> claim based on omissions of fact, [a defendant] must prove first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." <u>United States v. Allen</u>, 297 F.3d 790, 795 (8th Cir. 2002). In other words, the defendant must show "that the alleged omission[s] would have made it impossible to find probable cause." <u>United States v. Mathison</u>. 157 F.3d 541, 548 (8th Cir. 1998). Mere negligence by the affiant in omitting information is not sufficient to invalidate the warrant. <u>Franks v. Delaware</u>, 438 U.S. at 170. In his post hearing memorandum the defendant asserts that there were material omissions of fact in Detective Briggs' affidavit, namely that,

> "The affidavit omitted that no one answered when the detectives knocked at both doors of the house, no one was behind the house and no one answered when they knocked on the man door to the detached garage. The affidavit omitted the fact that the burn barrel/burn pile 'in plain view' was 50-60 feet off the driveway in the backyard. The affidavit misleads the Court that Anthony Seamon exited the residence in response to the 'knock and talk.'"

The affidavit here, if supplemented by the information which defendant asserts should have been included in the affidavit by

Detective Briggs, nevertheless contains more than sufficient information to support the finding of probable cause and none of the supplemental information detracts from that finding.

When Anthony Seamon came out of the residence a considerable period of time after the officers repeatedly knocked on the doors and windows of the residence and received no response they became concerned that other persons might be in the residence and that evidence might be destroyed. They therefore entered the residence to determine if anyone was inside and to secure the residence to prevent the destruction of evidence while awaiting the issuance of the search warrant. "Police officers are able to conduct a protective sweep search pending application for a search warrant when there is a risk that evidence will be destroyed." United States v. Jansen, 470 F.3d 762, 765 (8th Cir. 2006). Further, nothing observed during the protective sweep was used by Detective Briggs in his affidavit in support of the application for the search warrant. See United States v. Ruiz-Estrada, 312 F.3d 398, 404 (8th Cir. 2002). The entry and protective sweep were lawful.

While the officers were at the scene awaiting the arrival of Detective Briggs with the search warrant George Rothermich arrived in a pickup truck and drove onto the property. Detective Balleydier then contacted the defendant and, after a brief

conversation, placed the defendant under arrest for possession of the paraphernalia seen earlier in and around the burn barrel. Detective Balleydier then searched the defendant's person incident to that arrest and found and seized a glass vial with powder that appeared to be methamphetamine, a snort tube used to ingest or smoke methamphetamine and $495.00 in currency. Detective Balleydier then searched the pickup truck in which the defendant had arrived. Therein, he found and seized a digital scale, a glass pipe, a baggie corner and twist ties. The search of the pickup truck was a lawful search because based upon probable cause. Law enforcement officers may lawfully search a vehicle without a warrant if they have probable cause to believe that contraband or evidence of a crime could be found in the vehicle. United States v. Ross, 456 U.S. 798 (1982); United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000). Probable cause must be considered in the totality of the circumstances. Here, upon the defendant's arrival and subsequent search of his person, they found what appeared to be methamphetamine and related paraphernalia on his person. This discovery provided probable cause that similar items could be found in the truck. United States v. Johnson, 383 F.3d 538, 545-46 (7th Cir. 2004). See also United States v. Roberson, 439 F.3d 934, 940 (8th Cir.), cert. denied, ___ U.S. ___, 127 S.Ct. 409 (2006) (Contraband found in search of defendant's residence

provided probable cause to believe evidence could be found in vehicle outside residence in which defendant had been sitting.)  In addition to the contraband found on the defendant's person the officers had additional information from several sources that the defendant was engaged in manufacturing methamphetamine, and had seen evidence of such activity in and around the burn barrel. These were additional circumstances upon which to believe that contraband and evidence could be found in the vehicle.

The defendant seeks the suppression of statements made by him claiming the statements were made without his first having been advised of his <u>Miranda</u> rights.  When police officers question an individual who is in custody, the interrogation must be preceded by the warnings set out in <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966); namely that he has the right to remain silent, that nay statement he makes may be used against him, and that he has the right to the presence of an attorney, either retained or appointed, and that if he cannot afford an attorney one can be appointed for him.  <u>Id.</u> at 467-73.  Custodial interrogation means questioning initiated by law enforcement officers after a person has been deprived of his freedom of action in some significant way.  <u>Id.</u>  The proscription of <u>Miranda</u> applies only to questioning initiated  by police officers.  <u>Rhode Island v. Innis</u>, 446 U.S. 291 (1980).  Statements volunteered by persons in custody, and not in response to

questioning, are admissible even in the absence of <u>Miranda</u> warnings. <u>Miranda</u>, 384 U.S. at 478. Interrogation within the meaning of <u>Miranda</u> is "express questioning or its functional equivalent", that is, "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are likely to elicit an incriminating response from the suspect." <u>Rhode Island v. Innis</u>, <u>supra</u>. at 300-01.

The only statement shown to have been made by the defendant in the evidence now before the court is the defendant's statement that "his wife wasn't involved in anything." this statement was made by the defendant immediately after Detective Balleydier identified himself to the defendant and told the defendant that they were investigating reports that he was involved in manufacturing methamphetamine. Immediately after the defendant made the statement he was placed under arrest and handcuffed. Assuming that the defendant was in custody at the time the statement was made, it is admissible even though made without his having been advised of his <u>Miranda</u> rights because the statement was volunteered by the defendant and not made in response to interrogation by Detective Balleydier. The detective's statement of the reason for the presence of the officers and the nature of their investigation was not interrogation within the meaning of

<u>Miranda</u>. <u>United States v. Wipf</u>, 397 F.3d 677, 685 (8th Cir. 2005); <u>United States v. Lockett</u>, 393 F.3d 834, 837-38 (8th Cir. 2005).

Conclusion

For all of the foregoing reasons Defendant George Henry Rothermich's Motion To Suppress Based Upon Events Of May 29, 2008, (Docket No. 40) should be denied.

<u>Government's Motion For A Pretrial Determination Of The Admissibility Of Defendants' Statements Pursuant To Title 18, United States Code 3501</u> (Docket No. 33)

Defendants Anthony Wayne Seamon and Roy William Rothermich filed no pretrial motions and it is therefore recommended that the government's motion be denied as moot as to those defendants. <u>See</u> <u>Patterson v. United States</u>, 133 F.3d 645, 648 (8th Cir. 1998); <u>United States v. Miller</u>, 987 F.2d 1462, 1464 (10th Cir. 1993).

As to defendant George Henry Rothermich, for the reasons set out in the discussion of defendant's motion to suppress, it is recommended that the government's motion be granted.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant George Henry Rothermich's Motion To Suppress Based On Events Of May 29, 2008 (Docket No. 40) be denied.

**IT IS FURTHER RECOMMENDED** that the Government's Motion For A Pretrial Determination Of The Admissibility Of Defendants' Statements Pursuant To Title 18, United States Code 3501 (Docket No. 33) be denied as moot as to defendants Anthony Wayne Seamon and Roy William Rothermich; and granted as to defendant George Henry Rothermich.

The parties are advised that they have until **May 6, 2010,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

_____
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of April, 2010.