UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CR00815 ERW |
| ) | |
| GEORGE HENRY ROTHERMICH, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Frederick R. Buckles [doc. #69], pursuant to 28 U.S.C. § 636(b).

In the Report and Recommendation, Magistrate Judge Buckles concluded that Defendant George Henry Rothermich's ("Defendant") Motion to Suppress Based upon Events of May 29, 2008 [doc. #40] should be denied. Magistrate Judge Buckles also recommended that the Government's Motion for a Pretrial Determination of the Admissibility of Defendants' Statements pursuant to Title 18, United States Code, Section 3501 [doc. #33] should be granted as to Defendant. Defendant subsequently filed Objections to the Report and Recommendation [doc. #74] with respect to the recommended denial of his Motion to Suppress, and the Court therefore will conduct a *de novo* review as to those matters to which Defendant objects.

**I.    LEGAL STANDARD**

"[D]istrict courts may designate magistrate judges to conduct, *inter alia*, evidentiary hearings on suppression motions and to submit to a district judge proposed findings of fact and recommendations for the disposition of the matter." *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)). § 636(b)(1) further requires that when a party

objects to the magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo review determination of those portions of the report or specified proposed findings or recommendations to which objection is made."[1] The district court has wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1).

## II. DISCUSSION

At the outset, the Court notes that with a single exception discussed below, Defendant does not object to the recitation of the facts contained in the Report and Recommendation. The Court therefore will not reiterate them here.

Defendant offers two principal objections to the Report and Recommendation. Defendant first argues that Magistrate Judge Buckles erred in concluding that the "burn barrel," a barrel used for burning trash which was found to contain the remains of certain items commonly used in manufacturing methamphetamine, was not within the curtilage of the home. Second, Defendant claims that Corporal Briggs and Detective Balleydier inspected the back area of Defendant's property prior to checking the garage, and that their "knock and talk" visit ended when Corporal Briggs knocked on the garage door and no one answered. Thus, according to Defendant, Corporal Briggs exceeded the permissible scope of the visit in subsequently proceeding to the back of the garage, where he noticed the "burn barrel." The Court considers these arguments in turn.

---

[1] 28 U.S.C. § 636(b)(1)(B) provides that "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court . . . ." The statute further provides that each party may file written objections within ten days of being served with a copy of the magistrate judge's report and recommendation. *Id.* § 636(b)(1).

"The Fourth Amendment protects the curtilage of an individual's residence, but not surrounding open fields." *United States v. Boyster*, 436 F.3d 986, 991 (8th Cir. 2006) (internal citation omitted); *United States v. Pennington*, 287 F.3d 739, 745 (8th Cir. 2002) ("[T]he field was outside the curtilage of [the defendant's] residence and therefore was an open field that could be entered without a warrant.") (internal citations omitted); *see also Oliver v. United States*, 466 U.S. 170, 180 n.11 (1984) ("[T]he term 'open fields' may include any unoccupied or undeveloped area outside of the curtilage."). The curtilage is "the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life," *Oliver*, 466 U.S. at 180 (internal quotations and citations omitted), and a given area is part of the curtilage if "an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn*, 480 U.S. 294, 300 (1987). In *Dunn*, the Supreme Court identified four factors relevant to that determination: (1) the proximity of the area claimed to be curtilage to the home"; (2) "whether the area is included within an enclosure surrounding the home"; (3) "the nature of the uses to which the area is put"; and (4) "the steps taken by the resident to protect the area from observation by people passing by." *Id.* at 301 (internal citations omitted). These factors should not be applied mechanically, however, as "every curtilage determination is distinctive and stands or falls on its own unique set of facts." *United States v. Gerard*, 362 F.3d 484, 487 (8th Cir. 2004) (internal quotations, alterations, and citations omitted).

This is a very close case, but the Court ultimately agrees with Magistrate Judge Buckles's conclusion that the "burn barrel" was not located in the curtilage of Defendant's residence. Evidence introduced at the suppression hearing established that Defendant's property is on the north side of an east-west running highway, and that there are two structures on the property, a garage on the west side and a house on the east side, with a driveway and a gravel area separating

3

the two. The barrel was located some forty to sixty feet from the northeast corner of the garage, in an unenclosed area off of the gravel. Photographs of the barrel depict it as surrounded by burned and otherwise discarded items; it hardly appears to be the type of area that "an individual reasonably may expect . . . should be treated as the home itself." *Dunn*, 480 U.S. at 300. There is also no evidence that Defendant took any specific steps to protect it from public view, and the evidence introduced at the evidentiary hearing indicated that it was located away from the garage in an area apparently not otherwise used for residential purposes. As such, the Court concludes that the barrel was not located within that "area to which extends the intimate activity associated with the sanctity" of the home, *Oliver*, 466 U.S. at 180, and Corporal Briggs's inspection of the burnt remains lying in plain view in and around it therefore did not implicate the Fourth Amendment.[2] *See Boyster*, 436 F.3d at 991; *Pennington*, 287 F.3d at 745.

Defendant next disagrees with the factual finding that Corporal Briggs and Detective Balleydier were still in the process of conducting their "knock and talk" when Corporal Briggs viewed the barrel, in that Detective Balleydier's testimony indicated that he had already examined the back area of Defendant's property before Corporal Briggs walked to the back of the garage. By way of background, the so-called "knock and talk" is a reasonable, permissible investigative technique, provided that it consists of a limited intrusion in furtherance of legitimate law

---

[2] Defendant cites three cases, none of which is binding on this Court, for the proposition that a trash can not offered for collection is subject to Fourth Amendment protection, but two are readily distinguishable in that the respective courts had already concluded, on facts much different than those presented here, that the trash cans were located inside the curtilage. *See, e.g.*,; *North Carolina v. Rhodes*, 565 S.E.2d 266, 271 (N.C. Ct. App. 2002) (trash can sitting directly next to steps leading to door into home); *Kansas v. Wilson*, 2006 WL 2443710, at *6-*7 (Kan. Ct. App. 2006) (table) (trash container located in fenced-in back yard). In the third case Defendant cites, *Ball v. Wisconsin*, 205 N.W.2d 353, 358 (Wis. 1973), the court did find that a "burn barrel" located behind a rural residence was subject to Fourth Amendment protection, but that case pre-dates *Dunn* and contains an at-best equivocal finding that the barrel was located "on what would appear to be the curtilage of [the defendant's] house." *Id.*

4

enforcement objectives, such as making general, non-coercive inquiries of the occupants or requesting consent to search the property. *United States v. Weston*, 443 F.3d 661, 667 (8th Cir. 2006) (internal citations omitted). As that statement suggests, this type of intrusion is permissible even though it involves entering the curtilage, so long as police officers "restrict their movements to those areas generally made accessible to visitors – such as driveways, walkways, or similar passageways." *United States v. Spotted Elk*, 548 F.3d 641, 655 (8th Cir. 2008); *see also United States v. Hammett*, 236 F.3d 1054, 1059 (9th Cir. 2001) ("Law enforcement officers may encroach upon the curtilage of a home for the purpose of asking questions of the occupants."). Where officers conducting such a "knock and talk" are unable to locate an occupant by knocking at an obvious entrance, it does not necessarily run afoul of the Fourth Amendment for them to proceed to the back of a residence. *See United States v. Anderson*, 552 F.2d 1296, 1300 (8th Cir. 1977) ("We cannot say that the agents' action in proceeding to the rear after receiving no answer at the front door was so incompatible with the scope of their original purpose [of questioning the occupant about a theft] that any evidence inadvertently seen by them must be excluded as the fruit of an illegal search."); *Hammett*, 236 F.3d at 1060 ("[O]fficers must sometimes move away from the front door when they are attempting to contact the occupants of a residence. Generally, the subsequent discovery of evidence in plain view does not violate the Fourth Amendment.") (internal quotations and citation omitted); *see also, e.g.*, *Alvarez v. Montgomery County*, 147 F.3d 354, 358-59 (4th Cir. 1998); *United States v. Garcia*, 997 F.2d 1273, 1279-80 (9th Cir. 1993).

The testimony from the suppression hearing indicates that Corporal Briggs and Detective Balleydier did not exceed the permissible scope of their "knock and talk" visit prior to discovering the "burn barrel." Detective Balleydier testified that upon arriving at the residence, he, Corporal

Briggs, and Detective Gilliam first went to the front and side doors of the house, knocked, and received no response. His testimony indicates that after that, he went around to the back of the house, while Corporal Briggs, and possibly also Detective Gilliam, went to check at the garage. Hearing Tr. P.71 L.21-P.72 L.2. It was at this time, while Detective Balleydier was investigating the back of the house, that Corporal Briggs, after knocking on the garage door and again receiving no response, proceeded around to the back of the garage and noticed the "burn barrel." Hearing Tr. P.50 L.13-17; P.72 L.15-18. Defendant argues that Corporal Briggs had no reason to check in the back because Detective Balleydier had already been behind the house, but the Court concludes that it was not unreasonable for Corporal Briggs to take a closer look in the back of the garage. In any event, however, to the extent Defendant seeks to have evidence recovered from the "burn barrel" suppressed on this basis, it is largely irrelevant whether the officers exceeded the scope of their visit in checking behind the garage, because the Court has already concluded that the barrel was outside the curtilage, and the contents thereof lying in plain view were therefore not subject to Fourth Amendment protection.

In sum, then, the Court finds that both of Defendant's objections will be denied because evidence from the suppression hearing demonstrated that the "burn barrel," containing items used to support the warrant for Defendant's residence, was located outside the curtilage, and that the investigating officers did not impermissibly exceed the scope of their "knock and talk" visit in going behind Defendant's garage. Defendant did not otherwise object either to Magistrate Judge Buckles's recommendation that the Government's Motion for Pretrial Determination of the Admissibility of Defendant's Statements should be granted, or that Defendant's Motion to Suppress Based upon Events of May 29, 2008 should be denied. The Court has reviewed the findings of fact and conclusions of law contained in the Report and Recommendation and finds

them to be reasonable. As such, there is no need for the Court to conduct a full *de novo* review, and Magistrate Judge Buckles's Report and Recommendation will be adopted in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that the Government's Motion for a Pretrial Determination of the Admissibility of Defendants' Statements pursuant to Title 18, United States Code, Section 3501 [doc. #33], as to Defendant George Henry Rothermich, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Based upon Events of May 29, 2008 [doc. #40] is **DENIED**.

Dated this 11th Day of May, 2010.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　E. RICHARD WEBBER
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE